IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-00906-RBJ

JAMES C. CHAVEZ,

    Plaintiff,

v.

NESTLE DREYER'S ICE CREAM COMPANY d/b/a Nestle DSD Company,[1]

    Defendant.

---

## ORDER

---

This matter is before the Court on Defendant's Partial Motion to Dismiss [ECF No. 7] for failure to state a claim upon which relief may be granted. The Court exercises jurisdiction over this action pursuant to 28 U.S.C. § 1331. The motion became ripe for review on June 19, 2014 upon the filing of the defendant's Reply [ECF No. 13]. For the reasons discussed below, the motion is granted.

## BACKGROUND

For purposes of a motion to dismiss, the Court must accept all factual assertions contained in the pleadings as true. At the time of the actions giving rise to this lawsuit, plaintiff James Chavez worked for defendant Nestle Dreyer's Ice Cream Company, d/b/a Nestle DSD Company ("Nestle"). Mr. Chavez's employment began in December 2008 as a Kraft Foods

---

[1] The defendant's name originally appeared as "Nestle *Dryer*'s Ice Cream Company." The Court changes it accordingly to reflect the proper spelling: Dreyer's.

1

employee until 2010 when Nestle acquired Kraft Foods. From December 2008 through March 2011 Mr. Chavez worked as a Relief Route Driver under the supervision of District Sales Leader David Schoolmeester. In March 2011 Mr. Chavez transferred to the role of A/B Route Driver where he was supervised by District Sales Leader James Egan.

Mr. Chavez alleges that starting in 2010 and continuing through the present he has faced discrimination and harassment based on his race, color, national origin, sex, disability, and age. In support of his race and color discrimination claims, he alleges that in February or March of 2010 Mr. Schoolmeester asked him if he was a "sand nigger." Complaint [ECF No. 1] at ¶ 23. Further, sometime in 2011 Mr. Schoolmeester asked him if he used "hair relaxer on [his] jerry curls." *Id.* at ¶ 24. In support of his national origin claim, Mr. Chavez reports that in the summers of 2010 and 2011 Mr. Schoolmeester told him, "You Indians are lazy, stupid drunks." *Id.* at ¶ 26. In July 2011 Mr. Schoolmeester also asked him if his kids were "born with fetal alcohol syndrome or just drunk." *Id.* at ¶ 25. Finally, sometime in 2010 or 2011 Dennis Pixler, a Route Sales Representative employed by Nestle, told Mr. Chavez he was only hired "because of being a Mexican." *Id.* at ¶ 27. As to his sex discrimination claim, Mr. Chavez alleges that on multiple occasions throughout his employment Mr. Schoolmeester and others asked him if he was "gay or a homo" and that in July 2010 and again in June 2011 an unspecified employee asked him if he "had ever been with another man." *Id.* at ¶¶ 31–32. Further, sometime in 2010 or 2011 Mr. Pixler told him that if he was a "gay homo and had AIDS, [he] couldn't work with [him]." *Id.* at ¶ 33. Finally, in support of his age discrimination claim Mr. Chavez reports that in November 2011 an unnamed District Sales Leader told him that his job was "for a younger, fitter man." *Id.* at ¶ 37. (A discussion of Mr. Chavez's disability claim is found below.)

Mr. Chavez reported these instances to Area Sales Leader James Populorum in July 2011 and on three subsequent occasions, the dates of which were not listed in the Complaint. *Id.* at ¶ 38. He also reported them to the Manager of Human Resources Kristen Barlour, though it is unclear when. *Id.* at ¶ 39. These reports did not result in any corrective action. *Id.* at ¶ 40.

In further support of his sex discrimination claim Mr. Chavez alleges two occasions of physical harassment that occurred after he reported the discriminatory conduct discussed above. In November 2011, while working at Nestle's Loveland office, Mr. Schoolmeester "intentionally touched the genitals of Mr. Chavez … said 'excuse me' [and] left the room without comment." *Id.* at ¶ 44. A month later in December 2011, Mr. Schoolmeester "reached in between Mr. Chavez's legs from behind and with his right hand touched the genitals of Mr. Chavez with his cupped palm." *Id.* at ¶ 47. Mr. Chavez then immediately left the room and, in the process, ran into the door jamb, causing him to break his glasses, crack some teeth, and twist and bruise his knee. *Id.* at ¶ 49. A later diagnosis showed that the knee had significant scar tissue and would require surgery.[2] Mr. Chavez also had one tooth replaced with an artificial implant and at the time of filing still required two more teeth capped.

In support of his disability discrimination claim Mr. Chavez alleges significant psychological injury from the described incidents. He had a nervous breakdown approximately ten days after the December 2011 incident and has had panic attacks when recalling the harassment he suffered at the hands of Mr. Schoolmeester. Further, he developed post-traumatic stress disorder ("PTSD") as a result of the harassment and discrimination, which led to him being

---

[2] The Complaint states that Mr. Chavez injured his left knee when rushing out of the office, but that his diagnosis revealed scar tissue in his right knee. [ECF No. 1 at ¶¶ 49–50]. The Court assumes that this inconsistency was merely a typo and that the knee injured in the incident is the same one requiring surgery.

placed on an indefinite unpaid medical leave of absence beginning in December 2011.

Mr. Chavez filed a charge of discrimination with the Colorado Civil Rights Division and the Equal Employment Opportunity Commission ("EEOC") in May 2012. He complied fully with those organizations' administrative procedures, and the EEOC issued him a Notice of Right to Sue on December 30, 2013. He filed his Complaint with this Court on March 28, 2014, stating five causes of action against Nestle: (1) discrimination based on race, color, and national origin in violation of Title VII; (2) discrimination based on sex in violation of Title VII; (3) retaliation in violation of Title VII; (4) violation of the Age Discrimination Employment Act ("ADEA"); and (5) violation of the Americans with Disabilities Act ("ADA"). On May 12, 2014, Nestle filed a partial motion to dismiss Mr. Chavez's claims, specifically seeking dismissal of the final three causes of action.

## ANALYSIS

In reviewing a 12(b)(6) motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in the plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are purely conclusory need not be assumed to be true. *Id.* at 681.

### A. Title VII Retaliation.

A plaintiff makes out a prima facie case of retaliation under Title VII by showing "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would

have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (citation and alteration omitted). An adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032–33 (10th Cir. 2004). Further, "unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001).

It is undisputed that Mr. Chavez satisfies the first prong: he engaged in protected opposition to discrimination when he reported discriminatory statements and harassment to supervisors. Mr. Chavez also satisfies the second prong, as his placement on an extended medical leave of absence without pay was a materially adverse employment action. While Nestle asserts that his leave of absence was voluntary, Mr. Chavez sufficiently pled that the medical leave was involuntary. The Complaint states both that Nestle "requir[ed]" him to take the leave of absence and "plac[ed]" him on leave. [ECF No. 1 at ¶¶ 72–73]. This unpaid involuntary leave of absence is a "significant change in employment status" that causes a "significant change in benefits."

However, Mr. Chavez has not pled a causal connection between the protected activity and the materially adverse action. A period of three months or longer, standing alone, is insufficient to establish causation. *O'Neal*, 237 F.3d at 1253. Mr. Chavez's report to Mr. Populorum in July 2011 was over four months before his involuntary leave of absence in

December 2011.[3] Mr. Chavez did not plead any further facts connecting his placement on medical leave with his reporting the discrimination and harassment.[4] Accordingly, the retaliation claim must be dismissed under Rule 12(b)(6).

### B. Age Discrimination.

A plaintiff makes out a prima facie case of age discrimination under the ADEA by showing "(1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination." *Daniels v. UPS, Inc.*, 701 F.3d 620, 627 (10th Cir. 2012) (citation omitted). The plaintiff must show that age was the "but-for" cause of the adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).

Mr. Chavez alleges that an unnamed District Sales Leader told him that his job was for a "younger, fitter man." Complaint [ECF No. 1] at ¶ 37. In his Complaint he argues that he "suffered adverse employment actions in the form of harassment and discrimination and retaliation as alleged in the above paragraphs." *Id.* at ¶ 78. Giving Mr. Chavez the benefit of the doubt, the only adverse employment action alleged in his Complaint was his involuntary leave of absence. However, once again Mr. Chavez has not pled causation. The Complaint does not allege that the leave of absence was in any way connected to age discrimination, much less the "but-for" cause.

In his Response, Mr. Chavez also argues that the statement created a hostile work

---

[3] Though Mr. Chavez alleges that he made three subsequent complaints, no dates are listed in the Complaint. In turn, the Court can only take into account the July 2011 report when determining temporal proximity.

[4] If anything, it appears Mr. Chavez went on medical leave due to the physical and psychological effects of the December 2011 physical harassment by Mr. Schoolmeester. While this leave may have been a direct result of the harassment he faced, nothing in the Complaint indicates that Mr. Chavez was placed on leave in retaliation for making the protected complaints.

environment. [ECF No. 12 at 4]. "To evaluate whether a working environment is sufficiently hostile or abusive, we examine all the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Mr. Chavez has alleged a single age-related comment, an offensive utterance that is not sufficient to make out a hostile work environment claim. *See, e.g.*, *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1175 (10th Cir. 1996) (noting that "isolated manifestations of discriminatory conduct," such as an isolated comments, do not establish a hostile work environment). I conclude that Mr. Chavez's age discrimination claim must be dismissed.

### C. Disability Discrimination.

To make out a claim of disability discrimination under the ADA a plaintiff must allege that he "(1) was disabled; (2) was qualified, that is, could perform the essential functions of the job in question, with or without accommodation; and (3) suffered adverse employment action because of the disability." *Matthews v. Denver Post*, 263 F.3d 1164, 1167 (10th Cir. 2001). Further, "an employer must know of a disability before it can be held liable under the ADA." *Jackson v. City and Cnty. of Denver*, 628 F. Supp. 2d 1275, 1305 (D. Colo. 2008).

Mr. Chavez seems to allege (although it is not explicit) that he was involuntarily placed on leave without pay in December 2011 after he had a nervous breakdown caused by his supervisor's second groping incident. If so, the facts possibly might have supported a Family and Medical Leave Act ("FMLA") claim for 12 weeks of paid leave. *See* 29 U.S.C. § 2612

(a)(1)(D) (providing for twelve weeks of paid leave for eligible employees when a serious health condition "makes the employee unable to perform the functions of the position of such employee"). However, despite his multiple-claim pleading style, he did not allege a violation of the FMLA.

What he did allege, in his words, is that "Mr. Chavez suffers from Post-Traumatic Stress Disorder as shown by attached Exhibit A" and that "[a]s a result of Mr. Chavez's Post-Traumatic Stress Disorder Mr. Chavez has taken an indefinite medical leave of absence due to this disability." Complaint [ECF No. 1] ¶¶ 56–57. His attached Exhibit A is a form apparently completed by his physician, Eric Straumanis, M.D., bearing dates between January 31 and February 5, 2013, and indicating a diagnosis of "Mood D/O NOS" and "Post Traumatic Stress D/O." [ECF No. 5 at 1]. The form indicates that Mr. Chavez reported that his condition was "related to assault @ work." *Id.* at 2. Mr. Chavez acknowledges in his response to the pending motion that the defendant was made aware of his disability as of February 2013. [ECF No. 12 at 5]. Although the Court construes well-pleaded allegations of fact in the plaintiff's favor for purposes of a Rule 12(b)(6) motion, it also takes the allegations for what they say. Here, per his Complaint (with its exhibit) and his response brief, the defendant did not know of Mr. Chavez's claimed disability (PTSD) when he was placed on leave.

Moreover, it is fundamental to a claim of discrimination based upon disability that an employer has failed to make a reasonable accommodation to the disability. Mr. Chavez does not allege that he ever requested, or that the defendant ever failed or refused to make, a reasonable accommodation. Rather, the physician's form indicates that Mr. Chavez reported that he "[f]eels he cannot work." [ECF No. 5 at 2]. He is on indefinite leave, which if anything would seem to

be consistent with his claim of inability to work and would further have supported a claim under the FLMA. However, he does not allege that he was denied a return from leave due to his disability. The Court concludes that plaintiff's disability discrimination claim must therefore be dismissed for failure to state a claim upon which relief can be granted.

## ORDER

Accordingly, Defendant's Partial Motion to Dismiss [ECF No. 7] is GRANTED. Plaintiff's third, fourth, and fifth claims for relief are hereby DISMISSED WITHOUT PREJUDICE.

It is further ORDERED that the Clerk of the Court shall change the docket sheet to show the defendant's name spelled correctly as Nestle Dreyer's Ice Cream Company, d/b/a Nestle DSD Company.

DATED this 8th day of July, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge